IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PUERTO RICO CLEAN ENERGY CORP.,
*et al.*,

    **Plaintiffs,**

          **v.**               **Civil No.** 14-1761 (FAB)

ROBERT HATTON-GOTAY, *et al.*,

    **Defendants.**

OPINION AND ORDER[1]

BESOSA, District Judge.

Before the Court is defendants' motion to dismiss, (Docket No. 10), which plaintiffs oppose, (Docket No. 13).  For the reasons discussed below, the motion is **GRANTED.**  Plaintiffs' complaint, (Docket No. 1), is **DISMISSED.**

BACKGROUND

Plaintiffs are Ramon A. Cacho-Perez ("Cacho"), his businesses, Utuado Management & Development Company, Inc. ("Utuado Management") and Puerto Rico Clean Energy Corporation ("Clean Energy"), his real estate appraiser, Mario Dumont-Collazo ("Dumont") and the Dumont-Sanchez conjugal partnership.  (Docket No. 1.)  On October 14, 2014, plaintiffs filed a complaint against Robert Hatton-Gotay ("Hatton") and his conjugal partnership (collectively,

---

[1]  Rachel L. Hampton, a second-year student at the University of Michigan Law School, assisted in the preparation of this Opinion and Order.

"defendants"). <u>Id.</u> The complaint alleges that Hatton and his enterprise - consisting of his son, Ricardo Hatton-Rentas ("Ricardo Hatton"), his business partner, Edwin Loubriel-Ortiz ("Loubriel"), his business, Fountainbleu Plaza Development Corporation ("Fountainbleu"), and his attorneys, Efrain E. Rivera-Perez ("Rivera") and Ruben T. Nigaglioni ("Nigaglioni") - engaged in a pattern of extortion acts in an illegal racketeering scheme in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(b)-(d). <u>Id.</u> The complaint also includes supplemental claims for malicious prosecution and abuse of process pursuant to Puerto Rico's general torts statute. P.R.Laws Ann. tit. 31, § 5141. <u>Id.</u>

On February 23, 2015, defendants moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint. (Docket No. 10.) On March 31, 2015, plaintiffs opposed the motion to dismiss. (Docket No. 13.)

## FACTUAL ALLEGATIONS

As is customary on a Rule 12(b)(6) motion to dismiss, the Court takes as true the facts alleged in the complaint and recites them in a light most favorable to the non-moving party, here, plaintiffs. <u>See</u> <u>Ocasio-Hernandez v. Fortuno-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011).

### The July 2003 Agreement

The alleged acts of extortion begin with a stock option agreement made on July 23, 2003 (the "July 2003 Agreement"), between Cacho and Hatton by which Cacho transferred all of his shares in Utuado Management to Hatton in exchange for $850,000. (Docket No. 1 at ¶ 22.)  Pursuant to this agreement, Hatton was to obtain a permit to extract sand from Utuado Management's land in order to increase the value of the property.  Id.  According to plaintiffs, Cacho retained the option to buy back his shares, which he planned to exercise once Hatton received the sand extraction permit.  Id.  Alas, Hatton never sought the permit, so Utuado Management's property never increased in value.  Id.  Cacho was therefore unable to exercise his option and, as a result, lost title to Utuado Management.  Id. at ¶ 23.  Plaintiffs allege, in not so many words, that Hatton took the money and ran.

### The Nullity and Damages Action

Vexed by Hatton's breach, Cacho filed a civil complaint at the Puerto Rico Superior Court, Ponce Division, on July 28, 2005 (the "Nullity and Damages Action").  (Docket No. 1 at ¶¶ 23-24.)  The proceeding continued until December 23, 2009, when the Superior Court entered a judgment finding, *inter alia*, that the July 2003 Agreement effectively created a usurious loan.  Id. at ¶ 26.  The court declared the July 2003 Agreement null and void, reverted

control of Utuado Management to Cacho, and ordered Hatton to pay over eight million dollars in compensatory damages.  Id. at ¶ 27.

On March 4, 2010, Hatton appealed the judgment to the Puerto Rico Court of Appeals, Ponce Judicial Region, which affirmed the factual and liability findings of the Superior Court, but reversed the damages award and ordered a new trial on damages.  (Docket No. 1 at ¶¶ 28-29.)  Hatton then filed a *certiorari* petition with the Puerto Rico Supreme Court, which was denied on November 4, 2011.  Id. at ¶ 30.  On February 24, 2012, the Puerto Rico Supreme Court denied Hatton's motion for reconsideration.  Id.

**The Acts of Extortion During the Nullity and Damages Action**

Plaintiffs allege that the following acts of extortion occurred during the Nullity and Damages Action trial and subsequent appeals:

On October 20, 2005, Cacho and his father appeared on behalf of Utuado Management to execute a mortgage deed (the "2005 Mortgage Deed"), using Utuado Management's real estate property as a guarantee.  (Docket No. 1 at ¶ 25.)  In response, Hatton filed two civil complaints against Cacho in 2006, requesting that the Puerto Rico Superior Court nullify the deed.  Id. at ¶¶ 46-50.

On August 10, 2010, Hatton filed a civil complaint against Dumont, Cacho's appraiser and expert witness in the Nullity and

Damages Action trial, for rendering a fraudulent report and opinion.  (Docket No. 1 at ¶¶ 51-56.)

On October 14, 2010, Hatton and his business partner, Loubriel, filed criminal charges against Cacho and Cacho's father for appearing on behalf of Utuado Management to execute the 2005 Mortgage Deed.  (Docket No. 1 at ¶¶ 35-40.)  The criminal charges, however, were ultimately dismissed.  Id. at ¶ 41.

On February 14, 2012, Hatton filed two professional conduct complaints against Cacho in the Puerto Rico Supreme Court.  (Docket No. 1 at ¶ 42.)  The Puerto Rico Attorney General recommended dismissal of the complaints on March 28, 2014.  Id. at ¶ 42-45.

**The Acts of Extortion After the Nullity and Damages Action**

After the Supreme Court denied Hatton's motion for reconsideration in the Nullity and Damages Action on February 24, 2012, plaintiffs allege the following acts of extortion:

On August 20, 2012, Hatton filed an ethics complaint against Judge Pedro Polanco-Bezares ("Judge Polanco"), the trial judge for the Nullity and Damages Action, as well as a motion to disqualify Judge Polanco from presiding over the new trial on damages.  See Docket No. 1 at ¶¶ 63-66; see also Docket No. 13 at p. 15.  The motion was denied on November 27, 2012.  (Docket No. 1 at ¶ 64.)

On November 1, 2012, Hatton filed criminal charges against Dumont, Cacho's expert witness, alleging that he committed perjury

when he testified at the trial for the Nullity and Damages Action.
(Docket No. 1 at  ¶¶ 57-62.)

As part of the Nullity and Damages Action, Utuado Management
obtained the court's permission to enter into an agreement with
Terratek for the extraction and sale of sand from its property on
May 14, 2012.  (Docket No. 1 at ¶ 67.)  On November 20, 2012,
Hatton and his agents falsely impersonated public officials,
invaded Utuado Management's land, and used force and intimidation
to obstruct Terratek's sand extraction operation.  Id. at ¶¶ 68-69.

***The Purpose of the Extortion***

Plaintiffs aver that Hatton committed the above acts of
extortion for the purposes of:  (1) obtaining ownership of Utuado
Management; and (2) canceling the multimillion-dollar damages award
imposed in favor of Utuado Management and Cacho during the Nullity
and Damages Action.  (Docket No. 13 at p. 3.)

**DISCUSSION**

**The RICO Claim**

Congress originally enacted RICO to help fight organized crime
and combat enduring criminal conduct.  Home Orthopedics Corp. v.
Rodriguez, 781 F.3d 521, 527 (1st Cir. 2015).  RICO provides, in
relevant part, that it is unlawful for:

> any person employed by or associated with any enterprise
> engaged in, or the activities of which affect, interstate
> or foreign commerce, to conduct or participate, directly

or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 U.S.C. § 1962(c).  The elements of a RICO claim are: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005).

In moving tor dismiss plaintiffs' RICO claim, defendants argue that the complaint neither alleges a pattern of racketeering nor an ongoing enterprise.  (Docket No. 10.)  As discussed below, the Court finds that the complaint fails on the pattern element, which alone warrants dismissal.

RICO specifically enumerates the kinds of illegal acts that count as "racketeering," and includes the crime of extortion.  See 18 U.S.C. § 1961(1).[2]  Statutorily, the "pattern of racketeering" element requires at least two acts of racketeering that occurred within ten years of each other.  Id. § 1961(5).  The Supreme Court has held that the pattern element additionally requires a showing

---

[2]  Puerto Rico's extortion law provides:

> Any person who, by means of violence or intimidation, or under the pretext of rights as a public officer or employee, compels another person to deliver property or to perform, tolerate or omit acts which occur or are executed after an act of violence, intimidation or under pretext of authority shall be punished with imprisonment for a fixed term of three (3) years.

P.R. Laws Ann. tit. 33, § 5261.

that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued activity." <u>Giuliano</u>, 399 F.3d at 386-87 (quoting <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 239 (1989)).  This is known as the "continuity" requirement. <u>Home Orthopedics</u>, 781 F.3d at 528 (citing <u>Giuliano</u>, 399 F.3d at 386-87).

Defendants argue that plaintiffs fail to satisfy the continuity requirement.  (Docket No. 10 at p. 9.)  Continuity can be established in two ways:  the "closed-ended" approach refers to a closed period of repeated conduct, <u>H.J.</u>, 492 U.S. at 241, while the "open-ended" approach, in contrast, allows a plaintiff to state a claim without waiting for a long-term pattern to develop, <u>Giuliano</u>, 399 F.3d at 387.

### *"Close-ended" Continuity*

"Closed-ended" continuity is found through related predicates over a considerable time period that amount to a "threat of continued criminal activity." <u>Giuliano</u>, 399 F.3d at 387.  Neither the Supreme Court nor the First Circuit Court of Appeals has quantified the duration or number of predicate acts a plaintiff must state to allege the pattern element satisfactorily. <u>Home Orthopedics</u>, 781 F.3d at 529.  They have, however, established some parameters.  On one end, a few sporadic predicate acts or activity spanning only a "few weeks or months" cannot establish closed-ended continuity. <u>Id.</u>  On the other end, an extensive number of

predicate acts over a considerable time period may "compel[] a conclusion of continuity."  Id.; accord Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 18 (1st Cir. 2000).

Here, plaintiffs allege twelve predicate acts in a nine-year period (2003-2012):  (1) the July 2003 Agreement; (2-3) the two civil suits filed in 2006 against Cacho requesting nullification of the 2005 Mortgage Deed; (4) the 2010 civil suit against Dumont for rendering a fraudulent expert report during the Nullity and Damages Action; (5-6) the 2010 criminal charges against Cacho and his father for executing the 2005 Mortgage Deed; (7-8) the two professional disciplinary complaints filed against Cacho in 2012; (9) the ethics complaint filed against Judge Polanco in 2012; (10) the August 20, 2012 motion to disqualify Judge Polanco from the new trial on damages for the Nullity and Damages Action; (11) the 2012 criminal perjury charges against Dumont; and (12) the interference with Terratek's sand extraction operation on November 20, 2012. See Docket No. 1.

Even accepting plaintiffs' hyperbolic count,[3] twelve predicate acts over nine years does not automatically compel a finding of close-ended continuity.  See Rojas-Buscaglia v. Taburno-Vasarely, 39 F. Supp. 3d 208, 214 (D.P.R. 2014) (Besosa, J.) (finding ten predicate acts over ten years too few and too sporadic to give rise automatically to close-ended continuity without first examining other indicia).  In such "middle ground" cases, where the extent and duration of the alleged conduct do not easily resolve the issue, courts examine other indicia of continuity.  See, e.g., Giuliano, 399 F.3d at 387-88.  Other indicia of continuity may include whether the controversy involves multiple schemes (or just one scheme with a single objective), whether the scheme impacts many victims (or only a closed, targeted group of people), and

_____

[3]  Although the parties dispute it, the Court need not decide the precise number of predicate acts to decide the pattern issue.  The Court assumes twelve acts for the sake of its analysis, but acknowledges that this number is likely much lower.  For example, as defendants point out, the filing of litigation does not typically constitute a predicate act. (Docket No. 10 at p. 15.) While the First Circuit Court of Appeals has not spoken to this matter, "[n]umerous courts have held that the filing of litigation – no matter how lacking in merit – does not constitute a predicate racketeering act of extortion."  Gabovitch v. Shear, 70 F.3d 1252 (1st Cir. 1995) (citations omitted); cf. I.S. Joseph Co. v. J. Lauritzen A/S, 751 F.2d 265, 267-68 (8th Cir. 1984) ("[L]itigation is as American as apple pie.  If a suit is groundless or filed in bad faith, the law of torts may provide a remedy.  Resort to [RICO] is unnecessary.").  Even if litigation does count as a predicate act, the Court is dubious of plaintiffs' efforts to stretch a single lawsuit into multiple acts by counting one act for each named defendant.

whether the scheme has the potential to last indefinitely (or is instead of a finite nature).   Home Orthopedics, 781 F.3d at 529. The court does not rigidly evaluate these factors, but employs a "natural and commonsense approach" to determine whether the specific facts of the case suggest the "kind of broad or ongoing criminal behavior at which the RICO statute was aimed."   Id. (quoting Efron, 223 F.3d at 18).

Examining the other indicia of continuity, the Court finds that plaintiffs' allegations fall short.   To begin, that Hatton "sought to accomplish a specific, narrow mission [ownership of Utuado Management] - which stemmed from a single, discernible event [the July 2003 Agreement] - clearly cuts against a conclusion [of] a closed pattern."   See id. at 530.   Although plaintiffs argue that the scheme had two objectives - obtaining ownership of Utuado Management and canceling the multimillion-dollar damages award imposed against Hatton, see Docket No. 13 at pp. 5-6 - these dual objectives are two sides of the same coin:   the disputed ownership of Utuado Management is precisely the reason Hatton is liable for millions of dollars in damages.   In other words, Hatton's desire to escape this award is ancillary to his singular, narrow goal of obtaining ownership of Utuado Management.   See Home Orthopedics, 781 F.3d at 529-30 (finding single scheme where defendants committed numerous criminal acts in an effort to collect consulting

fees because all of acts had their origin in a single agreement); Efron, 223 F.3d at 18 (finding single scheme where every alleged act of deception was aimed at transforming ownership of a business).

Moreover, the alleged acts in this case impact only a closed group of victims.  Aside from Cacho and his businesses, the victims include Dumont and Judge Polanco - or, in other words, the expert witness and the judge who presided over the trial of the Nullity and Damages Action.  The tie that binds these victims is the litigation surrounding the July 2003 Agreement, the outcome of which determined whether Hatton or Cacho would own Utuado Management.  Other victims include Cacho's father and Terratek, both of whom appear to be pawns in Hatton's game to acquire Utuado Management:  filing of criminal charges against Cacho's father as retaliation for his role in executing the 2005 Mortgage Deed and interfering with Terratek's sand extraction operation on Utuado Management's land were simply efforts to prevent Cacho from realizing control of Utuado Management.  The latter act is, in fact, nothing more than an extrajudicial response, albeit nefarious, to the court's decision to permit a sand extraction deal between Cacho and Terratek during the Nullity and Damages Action. See Docket No. 1 at ¶¶ 67-68.

Finally, plaintiffs allege no facts indicating that defendants are likely to employ this scheme in the future to obtain control over other businesses.  As discussed *infra*, the nature of the scheme is not one that has the potential to last indefinitely.  See Home Orthopedics, 781 F.3d at 530 (finding defendants' conduct finite in nature where nothing indicated that extortionate conduct would continue after goal of receiving fees was obtained).

Employing a commonsense approach, the Court finds that the facts of this case do not suggest the type of broad or ongoing criminal behavior at which the RICO statute was aimed.  See Efron, 223 F.3d at 18.  Like Gollum pining for his precious ring, Hatton pursued ownership of Utuado Mangement with tremendous focus.  Considering the singularity and narrowness of Hatton's mission, which stemmed from one discernible event and was directed at one individual (though others were harmed incidentally along the way), plaintiffs' allegations fail to establish a pattern of racketeering under a theory of close-ended continuity.

**"Open-ended" Continuity**

A plaintiff may alternatively demonstrate a "pattern" of racketeering through "open-ended" continuity, which is found through a threat or realistic prospect of future criminal activity. Home Orthopedics, 781 F.3d at 531.  In order to satisfy open-ended continuity, a plaintiff must show that the racketeering acts "are

part of an ongoing entity's regular way of doing business" or that they include a "specific threat of repetition extending indefinitely into the future." Id. (quoting Feinstein v. Resolution Trust Corp., 942 F.2d 34, 45 (1st Cir. 1991)). In this inquiry, the nature of the enterprise and the nature of the predicate acts are particularly relevant. Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999).

Plaintiffs fail to allege that Hatton's racketeering acts are part of his regular way of doing business. They do not allege that Hatton is likely to employ the same hyper-litigious extortion scheme in his future business dealings. See Efron, 223 F.3d at 19 (finding nothing to suggest "defendants would seek to repeat their fraud in other partnerships or similar business settings" such that the racketeering activity might be par for the business course). To that end, plaintiffs likewise fail to allege that Hatton's acts pose a threat of future criminal activity. The complaint provides no indication that the scheme is likely to continue after the dispute over the July 2003 Agreement and the issue of Utuado Management's ownership is resolved. Indeed, most of the alleged predicate acts of extortion are centered around the Nullity and Damages Action litigation, which *ipso facto* precludes indefiniteness. See Gonzalez-Morales v. Hernandez-Arencibia, 221 F.3d 45, 51-52 (1st Cir. 2000) (assuming the "filing of frivolous

lawsuits" constitutes RICO extortion, "the fact that local court suits are still pending does not constitute long-term conduct demonstrating a threat of future activity"). Plaintiffs thus fail to state a pattern of racketeering under a theory of "open-ended" continuity.

For these reasons, the Court finds that plaintiffs do not sufficiently allege a "pattern of racketeering" necessary to sustain their RICO claim. The Court therefore **GRANTS** defendants' motion to dismiss, (Docket No. 10), and **DISMISSES WITH PREJUDICE** plaintiffs' RICO claim.

### State Claims

Defendants additionally ask for dismissal of plaintiffs' supplemental state law claims. (Docket No. 10 at p. 19.) A court may decline to exercise supplemental jurisdiction when it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In deciding whether to decline supplemental jurisdiction, the court considers a variety of factors, including fairness, judicial economy, convenience and comity. Desjardins v. Willard, 777 F.3d 43, 45 (1st Cir. 2015). Having dismissed plaintiffs' federal RICO claim and having considered these factors, the Court declines to retain jurisdiction. The Court thus **DISMISSES WITHOUT PREJUDICE** plaintiffs' state law claims.

Civil No. 14-1761 (FAB)                                                     16

### CONCLUSION

For the reasons above, defendants' motion to dismiss, (Docket No. 10), is **GRANTED**. The federal RICO claim is **DISMISSED WITH PREJUDICE**. There being no federal claims remaining on which to ground them, plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 23, 2015.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE